IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**POÑIL RANCH, L.P.,**

    Plaintiff,

v.

                                            Case No. 1:23-cv-00743-MIS-KK

**BOY SCOUTS OF AMERICA and
CHASE RANCH FOUNDATION,**

    Defendants.

## ORDER DENYING BOY SCOUTS OF AMERICA'S SECOND PARTIAL MOTION TO DISMISS EASEMENT BY ESTOPPEL CLAIM AND DENYING THE CHASE RANCH FOUNDATION'S MOTION TO DISMISS EASEMENT BY ESTOPPEL CLAIM STATED IN THE THIRD AMENDED COMPLAINT

THIS MATTER is before the Court on Defendant Boy Scouts of America's Second Partial Motion to Dismiss Easement by Estoppel Claim, ECF No. 170, filed July 31, 2024. Plaintiff Poñil Ranch, L.P. ("Plaintiff") filed a Response on August 12, 2024, ECF No. 182, to which Boy Scouts of America ("the Boy Scouts") filed a Reply on August 30, 2024, ECF No. 206.

Also before the Court is Defendant Chase Ranch Foundation's Motion to Dismiss Easement by Estoppel Claim Stated in Third Amended Complaint, ECF No. 188, filed August 19, 2024. Plaintiff filed a Response on August 23, 2024, ECF No. 198, to which Chase Ranch Foundation ("Chase Ranch") filed a Reply on September 11, 2024, ECF No. 213.

Upon review of the Parties' submissions and the relevant law, the Court will **DENY** the Motions.

I.      Background[1]

Plaintiff owns the Poñil Ranch located in Colfax County, New Mexico. Third Am. Compl. (ECF No. 154) ¶ 1. The Poñil Ranch consists of several stretches of mountainous, rough terrain and steep, deep canyons which effectively divide the Poñil Ranch into three roughly diagonal areas running along topographical lines. Id. ¶ 19. Since at least 1943, and continuing to the present, the Poñil Ranch property has been used for, inter alia, ranching, grazing, and hunting. Id. ¶ 17. The Poñil Ranch is a fenced property that can only be accessed through gates. Id. ¶ 22.

The Poñil Ranch is surrounded by other privately-owned properties and the Carson National Forest, and cannot be directly accessed by public roads. Id. ¶ 21. As relevant here, the Poñil Ranch is bordered on the west and southwest by the Philmont Scout Ranch ("Philmont Ranch"), which is owned by the Boy Scouts, and on the southeast by the Chase Ranch, which is owned by Chase Ranch and managed by the Boy Scouts.[2] Id. ¶¶ 2-4, 21.

The westernmost access point to the Poñil Ranch is via an access road known locally as "6-Mile Road," which is a dirt road that branches off Highway 204 and continues over the Philmont

---

[1] The Court accepts the truth of all well-pleaded factual allegations in Plaintiff's Complaint and draws all reasonable inference in Plaintiff's favor.

[2] The Poñil, Chase, and Philmont Ranches were all originally part of the Beaubien-Miranda Land Grant, subsequently known as the Maxwell Land Grant, established by a grant from the Mexican government in 1841. Id. ¶ 11. Between 1922 and 1932, Waite Phillips acquired over 300,000 acres of Maxwell Land Grant property, including what would later become the Philmont and Poñil Ranches. Id. ¶ 12. In 1938 and 1941, Phillips conveyed to the Boy Scouts the land that became the Philmont Ranch. Id. ¶ 13. By the time Phillips conveyed the land to the Boy Scouts, Phillips had developed trails and routes to provide easy access to several locations, including locations on what is now the Poñil Ranch. Id. ¶ 15. These access routes, including the 6-Mile Road and the Chase Canyon Road, were used for many decades by hunters and ranchers, and provided access within, through, and over the Philmont and Chase Ranches to what have become neighboring properties, including the Poñil Ranch. Id.
    In 1943, Phillips conveyed the remaining acreage, including what is now the Poñil Ranch, to McDaniel & Sons, Inc. Id. ¶ 16. Thereafter, the Poñil Ranch property changed ownership twice before being conveyed to two Kimberlin trusts on June 3, 1994. Id. ¶ 20. On October 31, 2016, the Kimberlin trusts conveyed the Poñil Tract to Plaintiff Poñil Ranch, L.P., the ownership of which is comprised of 1% by a general partner (a management trust) and the remainder by the Kimberlin trusts. Id. ¶ 20. Thus, it appears that the Kimberlin family has owned the Poñil Ranch since 1994. See id.

Ranch. Id. ¶ 23. The owners of the Poñil Ranch property have used 6-Mile Road to access the property since at least 1930 for ranching, grazing, hunting, and to perform annual repairs and maintenance on the property, including drilling water wells, hauling supplies, and building and maintaining the roads, fences, and other structures within the Poñil Ranch. Id. ¶¶ 17, 18(d), 23. Since at least 2003 they have also used 6-Mile Road to move herds of cattle into and out of the Poñil Ranch. Id. ¶¶ 18(e), 23. The 6-Mile Road is the least hazardous and most commonly used access route to the Poñil Ranch, but because of the Poñil Ranch's terrain, 6-Mile Road does not provide practical or passable access to all regions of the Poñil Ranch at all times. Id. ¶ 23.

The southernmost access to the Poñil Ranch is an access road known locally as the "Chase Canyon Road," which branches off a county road and continues over the Chase Ranch. Id. ¶ 24. The Chase Canyon Road has been used for decades by owners of the Poñil Ranch property to access the property for, inter alia, hunting, cattle ranching, repairs, and maintenance. Id. Chase Canyon Road provides the best access to the parts of the Poñil Ranch that cannot be practically or reliably accessed from other parts of the Poñil Ranch due to the terrain, seasonal flooding, washed out roads, and heavy snowfall. Id. ¶ 25. The Boy Scouts began managing the Chase Ranch in 2013. Id. Since then, Chase Ranch and the Boy Scouts have attempted to block Plaintiff's access to Chase Canyon Road. Id. ¶¶ 25, 33.

On October 19, 2021, Plaintiff filed the instant lawsuit as a Chapter 11 adversary proceeding in the United States Bankruptcy Court for the District of Delaware against the Boy Scouts only. See ECF No. 1. The original Complaint sought a declaratory judgment that Plaintiff holds a valid easement by prescription or easement by necessity over the Philmont Ranch. Id. ¶¶ 29-46. The Boy Scouts filed an Answer asserting that "all access over Defendant's property by Plaintiff was permissive only." ECF No. 17 at 7.

On September 1, 2023, the case was transferred to the United States District Court for the District of New Mexico pursuant to an agreed order.³  See ECF Nos. 31, 32; see also ECF No. 154 ¶ 5.

On September 11, 2023, Plaintiff filed a First Amended Complaint (with leave of the Court) against the Boy Scouts and Chase Ranch.  ECF No. 42.  Both Defendants filed Answers asserting that any and all use by Plaintiff over their properties was permissive.  ECF No. 58 at 13; ECF No. 59 ¶¶ 18, 29, 52, 54, 60; see also id. at 8.

On June 14, 2024, Plaintiff filed a Second Amended Complaint (with leave of the Court) asserting, for the first time, an easement by estoppel claim.  ECF No. 142 ¶ 49(e).  Both Defendants moved to dismiss the easement by estoppel claim.  ECF Nos. 147, 149.

On July 17, 2024, Plaintiff filed the operative Third Amended Complaint (as a matter of course) for Declaratory Judgment, Quiet Title to Easements, Breach of License, Trespass, Interference with Easements, and Injunctive Relief.  ECF No. 154.  Count Two of the Third Amended Complaint asserts a claim for Quiet Title to Easements, alleging that Plaintiff has express easements, id. ¶¶ 42-48, easements by reference, id. ¶ 49(a), implied easements, id. ¶ 49(b), prescriptive easements, id. ¶ 49(c), easements by necessity, id. ¶ 49(d), and easements by estoppel, id. ¶ 49(e), over the Philmont Ranch (via 6-Mile Road) and the Chase Ranch (via the Chase Canyon Road).  Relevant to the instant Motions, Plaintiff alleges that its easements over the Philmont and Chase Ranches

---

³ The Third Amended Complaint states that this Court has jurisdiction (1) pursuant to 28 U.S.C. § 1412 because the United States Bankruptcy Court for the District of Delaware has transferred the adversary proceeding to this Court, ECF No. 154 ¶ 5; (2) pursuant to 28 U.S.C. § 1332 because the Parties are completely diverse, id. ¶ 6; and (3) pursuant to 28 U.S.C. § 1331 and 36 U.S.C. § 30904(a)(5) because Congress decreed that the Boy Scouts shall have the power to "sue and be sued within the jurisdiction of the United States[,]" id. ¶ 7. The Court is satisfied that it has diversity jurisdiction because Plaintiff is a citizen of Texas, Chase Ranch is a citizen of New Mexico, and the Boy Scouts organization is a citizen of Washington, D.C. pursuant to 36 U.S.C. § 30901.

both are easements by estoppel because if, as Defendants claim (which Plaintiff denies), Plaintiff's use of the easements was by permission, then Chase Ranch and BSA [the Boy Scouts] allowed Plaintiff and its predecessors to use the easements under circumstances in which it was reasonable to foresee that Plaintiff/predecessors would substantially change their position believing that the permission would not be revoked; Plaintiff/predecessors substantially changed their position by agreeing to accept and then accepting a deed to the Poñil Ranch, by obtaining ownership of the Poñil Ranch, and thereafter by operating the Poñil Ranch and exercising all rights of a landowner who owns the full and unfettered right of access, ingress, and egress to and from the land, acting at all times in reasonable and detrimental reliance on that belief; Plaintiff/predecessors have engaged in no actions or conduct that would indicate any unequivocal or other intent to permanently stop using either easement; both Defendants knew that Plaintiff/predecessors were reasonably and detrimentally relying on the easements because Plaintiff/predecessors' open, obvious, and known access to the Poñil Ranch had been through the 6-Mile Road and Chase Canyon Road for many decades. Both Defendants knew that ownership of the Poñil Ranch had changed hands several times since the Maxwell Land Grant deeded to Waite Phillips property that included the Poñil Tract, and Defendants knew that each successive owner continued to use and to rely upon the use of the 6-Mile Road and Chase Canyon Road to reach the Poñil Ranch/Tract, continuing to the known use and continuing utilization of the two easements by Plaintiff, except when access is actively, wrongfully blocked.

Both Defendants have claimed that Plaintiff/predecessors' use of the two easements was permissive only, thus themselves claiming that Defendants gave permission by oral grant, promise, or representation. Defendants' assertions in their pleadings that the easements were given by permission is in the nature of a judicial or evidentiary admission and Defendants should be estopped from denying such permission. If Defendants establish that any period of permissive use of either easement existed, then at the same time all elements of easement of estoppel as set forth above also existed, and Plaintiff needs and has relied upon the existence of both easements as reasonable means of access to Plaintiff's property. An injustice to Plaintiff can be avoided "only by establishment of a servitude" in favor of Plaintiff over the 6-Mile Road and the Chase Canyon Road (Restatement (Third) of Property, Section 2.10). Establishment of the easements is justified because Chase Ranch and BSA should have reasonably foreseen, understood and believed that Plaintiff/predecessors would substantially change their positions by obtaining the Poñil Ranch in reliance on the reasonable belief that permission would not be revoked and because Plaintiff/predecessors have needed and reasonably relied upon both easements as access routes to their property, and they would not have reasonable access otherwise. It should have been apparent to Chase Ranch and BSA, because of their continuing awareness and knowledge of the decades-long use of both easements by Plaintiff/predecessors, that permanent use was expected, anticipated, relied upon, and sought. Therefore, Chase Ranch and BSA are estopped from claiming that

>Plaintiffs do not have easements by estoppel over the 6-Mile Road and the Chase Canyon Road.

Id. ¶ 49(e).

Defendants have each moved to dismiss Plaintiff's claim for easement by estoppel for failure to state a claim. ECF Nos. 170, 188. The Motions are fully briefed and ripe for disposition. See ECF Nos. 182, 198, 206, 213.

## II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." Id. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

### III.     Discussion[4]

Defendants argue that the Third Amended Complaint fails to state a claim for easement by estoppel that is plausible on its face.  ECF No 170 at 2; ECF No. 188 at 2.  They argue that most of Plaintiff's allegations violate federal pleading standards because they are not "simple, concise, and direct," ECF No. 170 at 5 (quoting Fed. R. Civ. P. 8(d)(1)), and are "merely a 'formulaic recitation of the elements' for easement by estoppel supported by 'naked assertion[s] [completely] devoid of further factual enhancement' and are therefore not entitled to be assumed true[,]" id. (alterations in original) (quoting Iqbal, 556 U.S. at 678, 681).  See also ECF No. 188 at 2, 4.  Defendants argue that Plaintiff has failed to allege facts demonstrating that Defendants made an oral promise, grant, or representation to Plaintiff regarding permissive access to 6-Mile Road or Chase Canyon Road; that Plaintiff substantially changed its position in reasonable reliance on the belief that permission would not be revoked; or that injustice can be avoided only by establishment of an easement.  ECF No. 170 at 5-7; ECF No. 188 at 4-6.  Defendants further argue that the Court cannot consider the Third Amended Complaint's allegation that "[b]oth Defendants have claimed that Plaintiff/predecessors' use of the two easements was permissive only" because Defendants "claimed" this in their Answers to prior complaints, and "only the allegations within the four corners of the complaint are to be considered."  ECF No. 170 at 5.  Defendants argue that in any event, there are no allegations that they gave Plaintiff full and unfettered permissive access resulting in a property right.  Id.; see also ECF No. 188 at 5.

Plaintiff argues that Defendants cite no authority requiring a plaintiff to allege that the defendant expressly communicated permissive use to state a claim for easement by estoppel.  ECF

---

[4] Defendants' arguments overlap substantially and, in fact, Chase Ranch "adopts by reference" the Boy Scouts' Motion.  See ECF No. 188 at 1.  Therefore, the Court will analyze the Motions together.

No. 182 at 6; ECF No. 198 at 5-6.  Plaintiff further argues that the Third Amended Complaint alleges that Plaintiff substantially changed its position by, for example,

> agreeing to accept and then accepting a deed to the Poñil Ranch, by obtaining ownership of the Poñil Ranch, and thereafter by operating the Poñil Ranch and exercising all rights of a landowner who owns the full and unfettered right of access, ingress, and egress to and from the land, acting at all times in reasonable and detrimental reliance on that belief.

ECF No. 182 at 6 (footnote omitted); ECF No. 198 at 6 (footnote omitted) (quoting ECF No. 154 ¶ 49(e)), and discussing Mountain Homeowners Ass'n v. J.L. Ward Co., 209 P.3d 347, 355 (Or. Ct. App. 2009)).  Plaintiff argues the Third Amended Complaint also reflects that Plaintiff changed its position because it alleges that "after acquiring the Poñil Ranch, there was investment in cattle grazing operations, guided hunting operations, and typical ranching-type operations and property management."  ECF No. 198 at 7 (citing ECF No. 154 ¶¶ 18(a) – (e), 24)).  Finally, Plaintiff argues that the Third Amended Complaint plausibly alleges that if Plaintiff does not prevail on another easement theory, an injustice can only be avoided by establishing the easements because there would be no reasonable alternative access to Poñil Ranch.  See ECF No. 182 at 7; ECF No. 198 at 7-8 (citing ECF No. 154 ¶¶ 21-23, 25, 27, 49(e)).

Defendants maintain that Plaintiff has failed to plausibly allege that Plaintiff (or its predecessors) received permission to use the roads, and Plaintiff cannot rely on representations made in Defendants' pleadings to survive dismissal.[5]  ECF No. 206 at 1-5.  They argue that "the

---

[5] Chase Ranch also argues that Plaintiff improperly attempts to amend the Third Amended Complaint through its Response brief because the Response brief characterizes the easement by estoppel claim as an "alternative theory of recovery" and the Third Amended Complaint does not.  ECF No. 213 at 2 (quoting ECF No. 206 at 1).  The Court rejects this argument.  Pursuant to Rule 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).  See also Boulware v. Baldwin, 545 F. App'x 725, 729 (10th Cir. 2013) ("Federal pleading rules have for a long time permitted the pursuit of alternative and inconsistent claims."); Campbell v. Barnett, 351 F.2d 342, 344 (10th Cir. 1965) (observing that Rule 8 "permits a plaintiff to plead alternate, hypothetical and inconsistent claims . . . .").  Chase Ranch has cited no authority holding that a plaintiff must explicitly state that claims are being pled in the alternative.

relevant case law . . . mandates that the permission must be communicated from the promisor to the promissee." Id. at 3 (citations omitted).  They argue that "[i]t is axiomatic that an easement by estoppel plaintiff cannot reasonably rely on express permission that he never heard or on an action or inaction implying permission that went unwitnessed or uncontemplated, otherwise there is no foundation for the plaintiff to claim that his reliance was reasonable." Id.  See also ECF No. 213 at 3 ("Plaintiff's easement by estoppel claim fails to provide any information about who gave 'permission' and when.").  Defendants further maintain that Plaintiff failed to plausibly allege circumstances in which it was reasonable to foresee that Plaintiff would substantially change position believing that permission would not be revoked, and did substantially change position in reasonable reliance on that belief.  ECF No. 206 at 5-8; ECF No. 213 at 4-5.  Chase Ranch argues that "Plaintiff purchasing the property cannot be a 'substantial change' in position unless the promise came from Chase Ranch at the time of the purchase and was a factor in the purchase[,]" which Plaintiff has not alleged.  ECF No. 213 at 4.  It further argues that Plaintiff failed to plead an injustice because the Third Amended Complaint contains allegations about access routes other than Chase Canyon Road.  Id. at 5.

The New Mexico Court of Appeals recently adopted the definition of easement by estoppel expounded by the Restatement (Third) of Property (Servitudes) § 2.10 (2000).  See Ulibarri ex rel. Feliberto & Domitilia Ulibarri Revocable Tr. v. Jesionowski, 523 P.3d 624, 639 (N.M. Ct. App. 2022).  That definition provides:

> If injustice can be avoided only by establishment of a servitude, the owner or occupier of land is estopped to deny the existence of a servitude burdening the land when:
>
> (1) the owner or occupier permitted another to use that land under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be

>revoked, and the user did substantially change position in reasonable reliance on that belief; or

>(2) the owner or occupier represented that the land was burdened by a servitude under circumstances in which it was reasonable to foresee that the person to whom the representation was made would substantially change position on the basis of that representation, and the person did substantially change position in reasonable reliance on that representation.

Restatement (Third) of Property (Servitudes) § 2.10 (Am. L. Inst. 2000). Only subsection (1) is at issue in this case. See ECF No. 154 ¶ 49(e). "This subsection covers the situation where a land owner or occupier gives permission to another to use the land, but does not characterize the permission as an easement or profit, and does not expressly state the duration of the permission." Restatement (Third) of Property (Servitudes) § 2.10 cmt. e (Am. L. Inst. 2000). "A servitude is established if the permission is given under such circumstances that the person who gives it should reasonably foresee that the recipient will substantially change position on the basis of that permission, believing that the permission is not revocable." Id. "The grant of permission under these circumstances impliedly represents that the grantor does not retain the power to revoke the permission granted." Id. "Under these circumstances, the grantor bears the burden of giving notice to the grantee that the permission granted is revocable." Id.

The Court rejects Defendants' argument that permission must be directly communicated from the promisor to the promissee. See Kapp v. Norfolk S. Ry. Co., 350 F. Supp. 2d 597, 612 (M.D. Pa. 2004) ("The permission need not be express, but may be inferred through the owner's acquiescence in an open and obvious use of the land.") (citing Turnway Corp. v. Soffer, 336 A.2d 871, 878 (Pa. 1975); Restatement (Third) of Property (Servitudes) § 2.10 cmt. e (Am. L. Inst. 2000))). The Comments to Section 2.10 provide examples of servitudes by estoppel created under the definition in Subsection (1). Restatement (Third) of Property (Servitudes) § 2.10 cmt. e (Am.

L. Inst. 2000). While some examples include express permission, others do not. See id. One particularly helpful example follows:

> 5. O, the owner of Blackacre, knew that Whiteacre, an adjacent unimproved property, was landlocked, and that A, its owner, had been using an old road across Blackacre for occasional access to Whiteacre. When A built a house on Whiteacre, using the old road to bring in construction materials, and then graded and paved the road to provide a driveway to the house, O said nothing about his right to revoke A's permission to use the road, even though he discussed the progress of the construction with A on several occasions. The conclusion would be justified that O is estopped from denying that A holds the benefit of a servitude for access to Whiteacre because it should have been apparent to O that A was relying on continued permission to use the road in making the investment to build the new house. The fact that the parties were neighbors, that O knew Whiteacre was landlocked and that A had been using the road across Blackacre shifted the burden to O to notify A that his permission to use the road was revocable.

Id.[6] In this example, O's permission was implied from the fact that the parties were neighbors, O knew Whiteacre was landlocked and knew that A had been using the road across Blackacre. See id.

Similarly, in this case, the Third Amended Complaint alleges that Defendants—who are Plaintiff's neighbors—"understood and believed . . . Plaintiff/predecessors have needed and reasonably relied upon both easements as access routes to their property, and they would not have reasonable access otherwise." ECF No. 154 ¶ 49(e). Additionally, "[f]or decades, Plaintiff and its predecessors in title, their families, their guests, and their invitees and any other persons or entities that Plaintiff or its predecessors have allowed, have continuously and openly used the 6-Mile Road easement in an unrestricted manner for general access, ingress, and egress to/from the Poñil Ranch," for personal use, id. ¶ 18(a), "to perform annual repairs and maintenance on the property, including drilling water wells, hauling supplies as needed, and building and maintaining the roads,

---

[6] According to Section 2.10's Reporter's Note, this example is derived from Holbrook v. Taylor, 532 S.W.2d 763 (Ky. 1976).

11

fences, and other structures within the Poñil Ranch[,]" id. ¶ 18(d), to move cattle herds into and out of Poñil Ranch, id. ¶ 18(e), and at least once (in 2016) to repair 6-Mile Road, id. ¶ 18(f). Furthermore, the Third Amended Complaint alleges that since the Boy Scouts began managing the Chase Ranch in 2013, Defendants "on occasion have attempted to block or have temporarily blocked the Poñil's use of the Chase Canyon Road by use of locks and other hostile acts, including the cutting off of Poñil locks within the last three years." Id. ¶ 25. A reasonable inference from this allegation is that on other occasions, Defendants have permitted Plaintiff to use the Chase Canyon Road to access the Poñil Ranch. Consequently, the Court finds that the Third Amended Complaint plausibly alleges that Defendants impliedly permitted Plaintiff to use 6-Mile Road and Chase Canyon Road to access Poñil Ranch. See Kapp, 350 F. Supp. 2d at 605, 612 (denying defendant's motion for summary judgment on easement by estoppel claim where the defendant railroad company impliedly permitted residents of street to use the roadway and railroad crossing for ingress and egress, and the plaintiffs asserted that the railroad crossing was the only viable means of ingress and egress for the residents who lived on the west side of the street).

For the same reasons, Defendants could reasonably foresee that Plaintiff would substantially change position believing that permission would not be revoked. See id. at 612 (finding that because the defendant "allowed all of the residents of Railroad Street to use the roadway for ingress and egress" and defendant performed maintenance on the railroad crossing the residents used for ingress and egress, "the residents could reasonably believe that permission to use the road would not be revoked").

The Court further finds that Plaintiff has plausibly alleged that it did substantially change position in reasonable reliance on the belief that Defendants' implied permission would not be revoked. On this issue, the Comments to Section 2.10 state, in relevant part:

12

> Normally the change in position that triggers application of the rule stated in this subsection is an investment in improvements either to the servient estate or to other land of the investor. . . . Failure to object to an investment made in improvements to land by another may give rise to an estoppel against the owner or occupier of the land, if the owner or occupier knows or reasonably should know that the investment is being made on the basis of a mistaken belief that the investor has a nonrevocable right to use the land.

Restatement (Third) of Property (Servitudes) § 2.10 cmt. e (Am. L. Inst. 2000).

Here, the Third Amended Complaint alleges that Plaintiff uses 6-Mile Road to perform annual repairs and maintenance on Poñil Ranch, including drilling water wells, hauling supplies as needed, and building and maintaining the roads, fences, and other structures within the Poñil Ranch[,]" ECF No. 154 ¶ 18(d), and in 2016 Plaintiff "took bulldozers and other heavy equipment onto the 6-Mile Road easement to repair it when [the Boys Scouts] had not done so[,]" id. ¶ 18(f). In the light most favorable to Plaintiff, Defendants knew or reasonably should have known that Plaintiff made the repairs to 6-Mile Road on the basis of a mistaken belief that Plaintiff has a nonrevocable right to use the land, and they failed to object to the repairs. Similarly, Plaintiff uses Chase Canyon Road to access the Poñil Ranch for hunting (for which it sells permits), cattle ranching, repairs, and maintenance. Id. ¶¶ 24, 30. In the light most favorable to Plaintiff, Plaintiff maintained, repaired, and sold permits to hunt on Poñil Ranch in reasonable reliance on the belief that permission to use Chase Canyon Road would not be revoked. See Intermountain Res., LLC v. Jorgensen, No. 2:08–CV–80 TS, 2010 WL 4237313, at *5 (D. Utah Oct. 21, 2010) (denying third-party defendant summary judgment on easement by estoppel claim where evidence showed that third-party plaintiff entered into a contract with the plaintiff on the assumption that the plaintiff could use a road that the third-party plaintiff had used for decades without objection). For these reasons, the Court finds Plaintiff has plausibly alleged that it substantially changed position in reasonable reliance on the belief that Defendants' implied permission would not be revoked.

Finally, the Court finds that the Third Amended Complaint plausibly alleges that an injustice can only be avoided by establishing the easements because there is no reasonable alternative access to Poñil Ranch.  See ECF No. 154 ¶¶ 21-23, 25, 27, 49(e)); Jesionowski, 523 P.3d at 639 (suggesting that an injustice can only be avoided by establishing an easement where the plaintiff otherwise cannot access the property).

### IV.     Conclusion

Therefore, it is **HEREBY ORDERED** that:

1. Defendant Boy Scouts of America's Second Partial Motion to Dismiss Easement by Estoppel Claim, ECF No. 170, is **DENIED**; and

2. Defendant The Chase Ranch Foundation's Motion to Dismiss Easement by Estoppel Claim Stated in Third Amended Complaint, ECF No. 188, is **DENIED**.

*Margaret Strickland*
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE