**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**POÑIL RANCH, L.P.,**

     Plaintiff,

**v.**

                                     Case No. 1:23-cv-00743-MIS-KK

**BOY SCOUTS OF AMERICA and
THE CHASE RANCH FOUNDATION,**

     Defendants.

_____/

## <u>ORDER DENYING THE CHASE RANCH FOUNDATION'S MOTION TO DISMISS OR SEVER</u>

**THIS MATTER** is before the Court on Defendant The Chase Ranch Foundation's Motion to Dismiss or Sever, ECF No. 186, filed August 19, 2024.  Plaintiff Poñil Ranch, L.P. ("Plaintiff") filed a Response on September 18, 2024, ECF No. 217, to which The Chase Ranch Foundation ("Chase Ranch") filed a Reply on October 2, 2024, ECF No. 222.  Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DENY** the Motion.

### I.  Background

Plaintiff owns the Poñil Ranch located in Colfax County, New Mexico.  Third Am. Compl. (ECF No. 154) ¶ 1.  The Poñil Ranch consists of several stretches of mountainous, rough terrain and steep, deep canyons which effectively divide the Poñil Ranch into three roughly diagonal areas running along topographical lines.  <u>Id.</u> ¶ 19.  The Poñil Ranch is a fenced property that can only be accessed through gates.  <u>Id.</u> ¶ 22.

The Poñil Ranch is landlocked—surrounded on all sides by other privately-owned properties and the Carson National Forest; it cannot be directly accessed by public roads.  <u>Id.</u> ¶ 21.

As relevant here, the Poñil Ranch is bordered on the west and southwest by the Philmont Scout Ranch ("Philmont Ranch"), which is owned by the Boy Scouts, and on the southeast by the Chase Ranch, which is owned by Chase Ranch and managed by the Boy Scouts.  Id. ¶¶ 2-4, 21.

The westernmost access point to the Poñil Ranch is via an access road known locally as "6-Mile Road," which is a dirt road that branches off Highway 204 and continues over the Philmont Ranch.  Id. ¶ 23.  The owners of the Poñil Ranch property have used 6-Mile Road to access the property since at least 1930 for ranching, grazing, hunting, and to perform annual repairs and maintenance on the property, including drilling water wells, hauling supplies, and building and maintaining the roads, fences, and other structures within the Poñil Ranch.  Id. ¶¶ 17, 18(d), 23.  Since at least 2003 they have also used 6-Mile Road to move herds of cattle into and out of the Poñil Ranch.  Id. ¶¶ 18(e), 23.  The 6-Mile Road is the least hazardous and most commonly used access route to the Poñil Ranch, but because of the Poñil Ranch's terrain, 6-Mile Road does not provide practical or passable access to all regions of the Poñil Ranch at all times.  Id. ¶ 23.

The southernmost access to the Poñil Ranch is an access road known locally as the "Chase Canyon Road," which branches off Highway 204 and continues over the Chase Ranch.  Id. ¶ 24; ECF No. 217 at 5.  The Chase Canyon Road has been used for decades by owners of the Poñil Ranch property to access the property for, inter alia, hunting, cattle ranching, repairs, and maintenance.  ECF No. 154 ¶ 24.  Chase Canyon Road provides the best access to the parts of the Poñil Ranch that cannot be practically or reliably accessed from other parts of the Poñil Ranch due to the terrain, seasonal flooding, washed out roads, and heavy snowfall.  Id. ¶ 25.

The Poñil, Chase, and Philmont Ranches were all originally part of the Beaubien-Miranda Land Grant, subsequently known as the Maxwell Land Grant, established by a grant from the Mexican government in 1841.  Id. ¶ 11.  Mining (gold, copper, iron, and coal), logging, ranching,

and frontier settlements and accompanying agricultural endeavors were among the principal activities carried out on the Maxwell Land Grant.  Id.  Various types of access roads to accommodate these activities and connect the settlements crisscrossed the Grant along the most accessible routes, often canyons and riverbeds.  Id.  All of these activities and access routes historically existed on those parts of the Maxwell Land Grant that eventually became the Ranches subject to the present action.  Id.

Between 1922 and 1932, Waite Phillips ("Phillips") acquired over 300,000 acres of Maxwell Land Grant property and named it the UU Bar Ranch.  Id. ¶ 12.  On January 9, 1930, Phillips acquired title to property that eventually became the Philmont, Chase, and the Poñil Ranches pursuant to a deed that expressly granted to Phillips "all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining" to the land conveyed to Phillips.  Id.; see also id. ¶ 24.  The Third Amended Complaint alleges that the rights, hereditaments, and appurtenances granted in the Maxwell-to-Phillips Deed included, among other things, rights of way, easements, roads, and access routes over the grantor's (Maxwell Land Grant's) property to reach the property being conveyed to Phillips.  Id. ¶ 12.

The land comprising the Philmont and the Poñil Ranches thus was under common ownership by Phillips until Phillips conveyed to the Boy Scouts the land that became the Philmont Ranch in 1938 and 1941.  Id. ¶ 13.  According to the Third Amended Complaint, the deeds would have reserved to Phillips the same hereditaments and appurtenances, and Phillips did retain the same hereditaments and appurtenances on the property he retained for himself, which would have included the road that became known as 6-Mile Road over the Philmont Ranch and reached Phillips's retained property.  Id.

3

At the time of the Phillips conveyances to the Boy Scouts, frontier settler access, mining, and timber routes provided the only rights of way, roads, and access routes into Phillips' land, and Phillips had also, prior to the conveyances, developed trails and routes to provide easy access to several locations, including access to locations on what is now the Poñil Ranch.  Id. ¶ 15.  These access routes, i.e., the 6-Mile Road and the Chase Canyon Road, were used for many decades by hunters and ranchers, and provided access within, through, and over the Philmont Ranch (and the Chase Ranch) to what have become neighboring properties, including the Poñil Ranch.  Id.

In or around June 1943, Phillips conveyed the remaining approximately 130,000 acres of the UU Bar Ranch, including what was known as the "Poñil Tract," to McDaniel & Sons, Inc. pursuant to a deed that included all of the same rights, hereditaments, and appurtenances included in the Maxwell-to-Phillips deed.  Id. ¶ 16.  The Poñil Tract subsequently became known as the Poñil Ranch, which consists of approximately 19,600 acres.  Id.  The Third Amended Complaint alleges that the rights, hereditaments, and appurtenances to the Poñil Tract obtained by McDaniel & Sons included the same rights, hereditaments, and appurtenances (which included the roads and access routes over the Philmont and Chase Ranches) that the grantor Phillips had reserved to himself when he conveyed the Philmont properties to the Boy Scouts.  Id.

In 1970, McDaniel & Sons, Inc. sold eleven tracts, including the Poñil Tract, to Bill Faudree.  Id. ¶ 20.  The McDaniel-to-Faudree deed included the following language: "Together with all improvements thereon and all water rights appurtenant thereto; and also all easements and rights of way appurtenant thereto."  Id.  The Third Amended Complaint alleges that the easements and rights of way appurtenant to the Poñil included the long-existing access routes over the Philmont and the Chase.  Id.  Thereafter, the property was conveyed through inheritance to the UU

Land Company, which later deeded the Poñil Tract to two trusts owned by the Kimberlin family through a Deed of Distribution that included the following language:

> "Appurtenances, Personal Property, and Prescriptive Rights:
>
> Grantors hereby convey and assign to Grantee all appurtenances, personal property, and prescriptive rights which Grantors own and which may be located on or appurtenant to the Property, and specifically any rights of access to the Property which Grantors own or have a right to by deed, operation of law or otherwise."

Id.  In October 2016, the Kimberlin trusts conveyed the Poñil Tract to Plaintiff Poñil Ranch, L.P., the ownership of which is comprised of 1% by a general partner (a management trust) and the remainder by the Kimberlin trusts.  Id.

The 6-Mile Road has been used by owners of the Poñil Ranch to access their land for whatever purposes Poñil owners wished since at least the Phillips ownership beginning in 1930, and for decades before that.  Id. ¶ 23.  Access and a right of access to the Poñil Ranch over what is now the Philmont Ranch has thus existed for more than 100 years.  Id.

The northern nearly 9,000 acres of the current Chase Ranch—including the land on which almost all of the Chase Canyon Road is located—and the land which is now the Poñil Ranch, were in the common ownership of Waite Phillips until he deeded the 9,000-acre tract to Mary Chase Springer in 1935.  Id. ¶ 24.  In 1965, this tract was deeded to Gretchen Sammis and became part of the modern Chase Ranch.  Id.  Throughout the Sammis ownership, the Poñil Ranch owners continued to use the Chase Canyon Road across the Chase Ranch to access the southern and southeastern areas of the Poñil.  Id. ¶ 25.  After Ms. Sammis' death, the Chase Ranch was structured so that it was deeded to the Chase Ranch Foundation, which is now managed by the Boy Scouts.  Id.  The Chase Ranch and the Boy Scouts have, on occasion, attempted to block or have

temporarily blocked Plaintiff's use of the Chase Canyon Road by use of locks and other hostile acts, including cutting off Plaintiff's locks.  Id.

On October 19, 2021, Plaintiff filed the instant lawsuit as a Chapter 11 adversary proceeding in the United States Bankruptcy Court for the District of Delaware against the Boy Scouts only.  See ECF No. 1.  The original Complaint sought a declaratory judgment that Plaintiff holds a valid easement by prescription or easement by necessity over the Philmont Ranch.  Id. ¶¶ 29-46.

On September 1, 2023, the case was transferred to the United States District Court for the District of New Mexico pursuant to an agreed order.  See ECF Nos. 31, 32; see also ECF No. 154 ¶ 5.

On September 11, 2023, Plaintiff filed a First Amended Complaint against the Boy Scouts and Chase Ranch.  ECF No. 42.

On July 17, 2024, Plaintiff filed the operative Third Amended Complaint for Declaratory Judgment, Quiet Title to Easements, Breach of License, Trespass, Interference with Easements, and Injunctive Relief.  ECF No. 154.  As relevant here, Count One seeks a declaratory judgment regarding Plaintiff's right to access the Poñil Ranch over the Philmont Ranch (via 6-Mile Road) and Plaintiff's right to access the Poñil Ranch over the Chase Ranch (via the Chase Canyon Road).  Id. ¶¶ 34-41.  Count Two of the Third Amended Complaint asserts a claim for Quiet Title to Easements, alleging that Plaintiff has express easements, id. ¶¶ 42-48, easements by reference, id. ¶ 49(a), implied easements, id. ¶ 49(b), prescriptive easements, id. ¶ 49(c), easements by necessity, id. ¶ 49(d), and/or easements by estoppel, id. ¶ 49(e), over the Philmont Ranch (via 6-Mile Road) and the Chase Ranch (via the Chase Canyon Road).

On August 19, 2024, Chase Ranch filed the instant Motion to Dismiss or Sever.  ECF No. 186.  Plaintiff filed a Response, ECF No. 217, to which Chase Ranch filed a Reply, ECF No. 222.

## II.      Legal Standard

Under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). Rule 21 governs misjoinder of parties, and provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party[,]" and "may also sever any claim against a party."  Fed. R. Civ. P. 21.  Defendants are misjoined when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in Rule 20(a)(2).  See Hanna v. Gravett, 262 F. Supp. 2d 643, 647 (E.D. Va. 2003); Brereton v. Commc'ns Satellite Corp., 116 F.R.D. 162, 163 (D.D.C. 1987); see also 7 Charles Alan Wright & Arthur R. miller, Federal Practice and Procedure § 1683 (3d ed. 2024).   Under that Rule,

> Persons . . . may be joined in one action as defendants if:
>
> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  "Misjoinder of parties is not a ground for dismissing an action."  Fed. R. Civ. P. 21.  "Misjoinder is waived by failure to make [a] seasonable objection."  Zeigler v. Akin, 261 F.2d 88, 91 (10th Cir. 1958).

"Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a transaction or occurrence, or a series of transactions or occurrences, for purposes of Rule 20, the courts have adopted a case-by-case approach."  7 Charles Alan Wright &

Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1653 (3d ed. 2024).  Many courts apply a "logical-relationship test."  <u>Id.</u>

> Utilizing this approach, all logically related events entitling a person to institute a legal action against another typically are regarded as comprising a transaction or occurrence. The use of the logical-relationship test seems particularly consistent with the philosophy underlying the passage in Rule 20 that allows joinder of parties whenever the claims arise out of "the same series of transactions or occurrences." Moreover, the flexibility of this standard enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20.

<u>Id.</u> (footnotes omitted).  "[C]ourts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court."  <u>Id.</u>

## III.    Discussion

Chase Ranch argues that the Court should either dismiss Chase Ranch or sever the claims against it "because the claims against each defendant do not arise out of the same transaction or occurrence and no common question of law or fact links the defendants."  ECF No. 186 at 3.  It argues that "this case is about different properties with different owners" and "the relevant facts and proof in the case will differ by defendant."  <u>Id.</u> at 3-4.  It argues that the Third Amended Complaint's allegations regarding the history of the ranches "is historical context" and "does not establish a common question of law or fact as to the two defendants."  <u>Id.</u> at 5.  It argues that although the Boy Scouts are alleged to manage Chase Ranch, the Boy Scouts have no ownership interest or authority to alter rights to the land.  <u>Id.</u>  It further argues that "different witnesses and proof will be required for the claims against Chase Ranch and [the Boy Scouts]."  <u>Id.</u> at 6.  It further argues that granting the Motion will prevent prejudice and promote judicial efficiency.  <u>Id.</u>

at 7.  For example, Chase Ranch "has spent time and resources attending depositions that have little or nothing to do with the claims against it. Further, at trial, a jury is likely to confuse issues that are unique to each defendant, improperly impacting the assessment of each defendant's liability." Id.

Plaintiff argues that joinder was proper because both preconditions of Rule 20(a)(2) are satisfied.  ECF No. 217 at 5.  It argues that "[t]he claims are all so intertwined that it would cause severe prejudice to sever either Defendant and require Poñil to proceed with two actions involving the same underlying facts and the same legal questions." Id.  It argues that Count Two alleges six alternative theories of easements, all of which share common facts and apply to both 6-Mile Road and Chase Canyon Road.  Id. at 5-7.  Plaintiff further argues that the unnecessary delay caused by a severance would severely prejudice Plaintiff and benefit Chase Ranch.  Id. at 8-9.  It further argues that a severance would result in the unnecessary duplication of discovery, id. at 9, and the multiplication of fees and costs, id. at 9-10.  Plaintiff recites several facts common to its claims against both Defendants, including the historical common ownership of the land, id. at 10-13; the historical use of 6-Mile Road and Chase Canyon Road, id.; the deeds conveying the Poñil Tract, including "appurtenances," to new ownership, id.; and the interrelationship between Chase Ranch and the Boy Scouts which evinces "joint participation in efforts to limit or block Plaintiff's use of the Chase Canyon Road[,]" id. at 16.  Plaintiff further argues that "a mere difference in evidence does not warrant severance[,]" id. at 16 (citing Roche Constructors, Inc. v. One Beacon Am. Ins. Co., Civil Action No. 11–cv–01903–PAB–CBS, 2012 WL 1060000, at *5 (D. Colo. Mar. 28, 2012)), and argues that, in any event, the evidence against both Defendants overlaps significantly, id. at 16-18.  Plaintiff further argues that the series of transactions and occurrences giving rise to

its claims against both Defendants are "logically related events" and "legally-related events." Id.

at 19.

> For example, Plaintiff's claims of easement implied by long use, easement by
> necessity, prescriptive easement and express easement via the clauses of the various
> deeds all arise out of the **series of transactions and occurrences** whereby the first
> tract of the Chase Ranch was severed from the Land Grant; the remaining land that
> would become Waite Phillips' UU Bar Ranch stayed in the Land Grant's common
> ownership until 1930 and then stayed in Phillips' common ownership until 1935
> and 1938; during Land Grant and Phillips' common ownership both roads served
> as quasi-easements allowing access within the property that was commonly owned;
> in 1935, the Poñil Tract and the Mary Chase Springer land were transformed into
> dominant and servient estates which the Chase Canyon Road was split; in 1938, the
> Poñil Tract and the Philmont Ranch were transformed into dominant and servient
> estates; in 1965 the Mary Chase Springer servient estate was conveyed to Gretchen
> Sammis, and that servient estate retained its legal character. Throughout the series
> of transactions and occurrences, conveyancing language was drafted by the Land
> Grant that was similar to the conveyancing language employed by Waite Phillips
> and the later conveyance of the UU Bar to McDaniels & Sons.

Id. at 19-20.  Given these commonalities, the "legal theories of easement relative to the Six-Mile

Road and Chase Canyon Road [not only] overlap, they are largely identical[,]" and "[t]he

application of the relevant legal theories to pertinent facts will involve many overlapping and

intertwined facts . . . ." Id. at 21.  Finally, Plaintiff argues that Chase Ranch's misjoinder argument

is waived because it consented to participate in this action and failed to make a seasonable

objection. Id. at 22-24.

In its Reply, Chase Ranch maintains that severance is proper because the case involves

"unrelated easements on different properties with different owners."  ECF No. 222 at 2.  It argues

that joinder is improper because Plaintiff's claims against Chase Ranch are not contingent on any

facts asserted against the Boy Scouts, id. at 3; there are crucial factual differences underlying

Plaintiff's claims for easements against each Defendant, id. at 4-5; Plaintiff asserts separate claims

against each Defendant that are unrelated to the other Defendant (e.g., Count Three asserts a claim

for trespass against the Boy Scouts only, and Count Five asserts a claim for a declaratory judgment regarding an ownership interest in a well and windmill against Chase Ranch only), id. at 5; and Plaintiff seeks different relief from each Defendant, id. at 5-6.  Chase Ranch states that it "would be amenable to a discovery-sharing agreement that allows the parties to use discovery from one case in the other to the extent that Plaintiff puts the parties on notice that the discovery could be used in both cases."  Id. at 6.  It also argues that the Motion was timely filed.  Id. at 6-7.  Finally, it argues that severance or dismissal without prejudice would promote efficiency for the parties and the Court and avoid prejudice to Chase Ranch."  Id. at 2; see also id. at 7-8.

As a threshold matter, the Court will assume arguendo that Chase Ranch's request for severance is "seasonable" and proceed to the merits of the Motion.  See Perez-Traverso v. Hosp. Comunitario Buen Samaritano, Civil No. 12–2263 (SCC), 2014 WL 1155346, at *2-3 (D.P.R. Mar. 21, 2014) (stating that the court could deem the plaintiffs' misjoinder arguments waived but declining to do so because Rule 21 permits the Court to drop parties on its own motion "at any time, on just terms.").

On the merits, the Court finds that Chase Ranch was not misjoined.  First, the Court finds that the right to relief asserted against Chase Ranch and the Boy Scouts in Counts One and Two— i.e., whether Plaintiff has easements over Defendants respective properties—arises out of the same series of transactions and occurrences.  See Fed. R. Civ. P. 20(a)(2)(A).  As detailed in Section I, supra, the land giving rise to the instant disputes was all under common ownership following the Maxwell Land Grant.  ECF No. 154 ¶ 11.  Mining, logging, ranching, and frontier settlements and accompanying agricultural endeavors were among the activities carried out on the Maxwell Land Grant.  Id.  Various types of access roads to accommodate these activities and connect the settlements crisscrossed the Grant along the most accessible routes, often canyons and riverbeds.

Id. All of these activities and access routes historically existed on those parts of the Maxwell Land Grant that eventually became the Ranches subject to the present action. Id.

According to Plaintiff's Response brief, in 1880 the Maxwell Land Grant "deeded a small 960-acre tract to Manly Chase which contained the southern few hundred feet of the Chase Canyon Road." ECF No. 217 at 10 (citing "Excerpt of 1880 Deed," ECF No. 217-2). "The multi-mile remainder of the Chase Canyon Road remained under the common ownership of the Land Grant for the next fifty years, as did the Six-Mile Road." Id. "Both roads were quasi-easements on the same property, meaning that both of them led from one part of the Land Grant to the . . . part of the Grant that later became the Poñil." Id. at 10-11.

Between 1922 and 1932, Waite Phillips acquired over 300,000 acres of Maxwell Land Grant property—"including all of the land underlying both the Six-Mile . . . and Chase Canyon roads[,]" ECF No. 217 at 11—and named it the UU Bar Ranch. ECF No. 154 ¶ 12. Phillips was expressly deeded "all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining" to the land conveyed to Phillips." Id. Plaintiff alleges that the rights, hereditaments, and appurtenances granted in the deed includes rights of way, easements, roads, and access routes. Id.

Phillips subsequently deeded parts of the UU Bar Ranch to others, including what would become the Philmont and Chase Ranches. Id. ¶¶ 13, 24. However, Phillips retained the Poñil Tract. See id. ¶¶ 13, 16. The Third Amended Complaint alleges that the deed conveying the Philmont Ranch property to the Boy Scouts "would have . . . reserved to Phillips the same hereditaments and appurtenances and Phillips retained the same hereditaments and appurtenances on the property Phillips retained, which would have included the road/easement that became known as 6-Mile Road over the Philmont Ranch and reached Phillips' retained property." Id. ¶ 13.

In 1943, Phillips conveyed the Poñil Tract to McDaniel & Sons, Inc. "pursuant to a deed…that included all of the same rights, hereditaments, and appurtenances included in the Maxwell-to-Phillips deed." Id. ¶ 16.

> The referenced hereditaments and appurtenances would have included (without limitation) the access routes, and easements, and rights of way over the Philmont and Chase Ranches that had long existed and been used by owners of the land known as the Poñil Tract to gain access to the Poñil Tract at several points. . . . The rights, hereditaments, and appurtenances to the Poñil Tract obtained by McDaniel and Sons included the same rights, hereditaments, and appurtenances (which included the roads and access routes over the Philmont and Chase Ranches) that the grantor Phillips had reserved to himself when he conveyed the Philmont properties to the [Boy Scouts].

Id. In 1970, McDaniel & Sons conveyed the Poñil Tract to Bill Faudree by deed which included the following language: "Together with all improvements thereon and all water rights appurtenant thereto; and also all easements and rights of way appurtenant thereto." Id. ¶ 20. According to the Third Amended Complaint, the easements and rights of way appurtenant to the Poñil included the long-existing access routes over the Philmont and the Chase. Id. Thereafter, the property was conveyed through inheritance to the UU Land Company, which later deeded the Poñil Tract to two Kimberlin trusts through a Deed of Distribution that included the following language:

> "Appurtenances, Personal Property, and Prescriptive Rights:
>
> Grantors hereby convey and assign to Grantee all appurtenances, personal property, and prescriptive rights which Grantors own and which may be located on or appurtenant to the Property, and specifically any rights of access to the Property which Grantors own or have a right to by deed, operation of law or otherwise."

Id. In October 2016, the Kimberlin trusts conveyed the Poñil Tract to Plaintiff Poñil Ranch, L.P., the ownership of which is comprised of 1% by a general partner (a management trust) and the remainder by the Kimberlin trusts. Id.

Thus, the Third Amended Complaint alleges that a series of transactions or occurrences culminated in Plaintiff being conveyed a single instrument—the deed to the Poñil Tract—that granted Plaintiff easements over both the Philmont Ranch (via 6-Mile Road) and the Chase Ranch (via the Chase Canyon Road).  The Court finds this sufficient to satisfy the first precondition of Rule 20(a)(2)—i.e., that a right to relief is asserted against Defendants jointly, severally, or in the alternative arising out of the same series of transactions or occurrences.  The fact that the Third Amended Complaint also asserts claims against Defendants individually does not result in misjoinder.  See Goodvine v. Ericksen, No. 09–C–0317, 2010 WL 5300528, at *1 (E.D. Wis. Dec. 17, 2010) ("Once all defendants are properly joined under Rule 20, a plaintiff may then assert any other claims he or she has against the defendants, even if the other claims are not transactionally related to the initial claims and do not involve a common question of law or fact.") (citing Fed. R. Civ. P. 18); see also Fed. R. Civ. P. 20(a)(2)(A) (stating that defendants may be joined in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences") (emphasis added); Fed. R. Civ. P. 18(a) ("A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party").  The Court further finds that there is a "likelihood of overlapping proof and duplication in testimony indicat[ing] that separate trials would result in delay, inconvenience, and added expense to the parties and to the court."  7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1653 (3d ed. 2024).

Second, the Court finds that questions of law and fact common to both Defendants will arise in the action.  For example, Count Two alleges that Plaintiff has express easements, easements by reference, implied easements, prescriptive easements, easements by necessity, and easements

by estoppel, over the Philmont Ranch (via 6-Mile Road) and the Chase Ranch (via the Chase Canyon Road) based on the same deed or deeds, historical conveyances, and historical uses of the properties.  ECF No. 154 ¶¶ 42-49.  As to the express easement claims, a common question of law that may arise in the action is whether the conveyance of "hereditaments" and "appurtenances" encompasses access routes like 6-Mile Road and Chase Canyon Road.  These common questions of law and fact are sufficient to satisfy the second precondition of Rule 20(a)(2).  The fact that there are also questions of law and fact that are specific to each defendant does not result in misjoinder.  See Goodvine, 2010 WL 5300528, at *1 ("Once all defendants are properly joined under Rule 20, a plaintiff may then assert any other claims he or she has against the defendants, even if the other claims are not transactionally related to the initial claims and do not involve a common question of law or fact.") (citing Fed. R. Civ. P. 18); see also Fed. R. Civ. P. 20(a)(2)(B) (stating that defendants may be joined in one action if "any question of law or fact common to all defendants will arise in the action") (emphasis added); Fed. R. Civ. P. 18(a) ("A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party").

The Court further finds that Chase Ranch has failed to persuade the Court that requiring it to proceed in this action will result in any prejudice to Chase Ranch, or that severing this action will promote efficiency for the parties and the Court.  Indeed, the Court finds that severing this action will have the opposite effect.  Finally, the Court finds that a jury is not likely to confuse the issues, and any potential confusion can be cured by a limiting instruction.

## IV.      Conclusion

Therefore, it is **HEREBY ORDERED** that The Chase Ranch Foundation's Motion to Dismiss or Sever, ECF No. 186, is **DENIED**.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE